# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                   **CASE NO.: 8:26-cr-00101-KKM-SPF**

**ANN MARY ZHENG,**

_____/

## DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S DETENTION ORDER AND MOTION FOR REVOCATION

COMES NOW the Defendant, ANN MARY ZHENG, by and through undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Honorable Court to revoke the Magistrate Judge's Order of Detention (Doc 35) and grant pretrial release subject to appropriate conditions, including surrender of her passport, GPS monitoring, mental health evaluation and treatment, weekly in person reporting to Pretrial Services, consent to search her residence upon request of Pretrial Services, and any other conditions the Court deems appropriate. In support, the Defendant states:

### I.    Introduction

Ms. Zheng is charged in an indictment with Accessory after the Fact in violation of 18 U.S.C. §3 and Evidence Tampering in violation of 18 U.S.C. §1512(c)(1). She made her initial appearance on March 26, 2026. The government sought pretrial detention. Ms. Zheng sought release. The hearing was continued

on Ms. Zheng's request to obtain clarity regarding her properties for the Court. Following the hearing, Defendant filed a Motion to Set Reasonable Conditions of Pretrial Release (Doc. 19), to which government filed a response in opposition after the conclusion of the resumed hearing (Doc. 24).

On April 16, 2026, the court ordered Ann Mary Zheng detained pending trial, finding by a preponderance of the evidence under 18 U.S.C. § 3142 that she presents a serious risk of flight. (Doc 35) The court found no evidence she participated in or knew of the bombing beforehand and concluded the "danger" factor did not support detention. (Doc 35, p. 12-13) The Court however held that no condition or combination of conditions would reasonably assure her appearance, granted the government's detention motion, denied her motion for release. (Doc 35, p. 13-15)

At the initial status hearing on the case, the parties advised the Court whichever way the detention ruling that was pending at the time went, one of the parties would appeal to the District Court  (Doc. 32) The Court therefore set the matter for a hearing on April 21, 2026 at 2 PM for the hearing challenging the detention order of the Magistrate.

## II.    Legal Standards

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755

(1987).  Under the Bail Reform Act, a defendant must be released on their personal recognizance or an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. §3142(b).

When a personal recognizance bond is insufficient, the Court must choose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. §3142(c)(1)(B).  In other words, the Court much consider *all* reasonable less restrictive alternatives to detention.  *See* 18 U.S.C. §3142(e).  Furthermore, conditions of release are intended to be preventative and not punitive in nature. *Salerno*, 481 U.S. at 747.  Ultimately, "the statute requires that the court consider a range of alternatives to pre-trial confinement before ordering detention and, if detention is ordered, to explain why lesser conditions are inadequate. The magistrate judge appears to have rejected Pretrial Service's position on release conditions but it is unclear if any middle ground like the currently proposed conditions was considered.

Pretrial detention is authorized only if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e).

To support a finding that a person should be detained before trial, the government must show: (1) by clear and convincing evidence that no condition or combination of conditions will reasonable assure the safety of the community; or (2) by a preponderance of the evidence that the defendant is a flight risk. *See United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir. 1985). In determining whether conditions exist that will reasonably assure the appearance of the defendant as required, the Court must consider several factors, including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. §3142(g).

III. **Argument**

A. **The 18 U.S.C. §3142(g) factors weigh in favor of Ms. Zheng's release on conditions.**

1. **Nature and Circumstances of Offense Charged**

Ms. Zheng is charged with non-violent[1] offenses that involve conduct of her brother.  She is not subject to any minimum-mandatory sentence. Ms. Zheng is accused of assisting her brother to leave the country for China and selling a vehicle after he completed his alleged crimes in the sold vehicle.  The conduct is alleged to have occurred prior to her brother's indictment or arrest.  There is no evidence of a conspiracy or aiding or abetting.  The conduct ended when Ms. Zheng arrived back in Florida from China.  She came back to Florida after questioning by federal agents at the airport in Detroit Michigan[2].  Her release by the agents in Detroit is a mission critical fact to the detention decision.  After the questioning, she spent the evening at a hotel because her flight was cancelled.  The next morning she flew to Tampa.  If she was indeed a flight risk, she would not have come to Tampa. She was near the Canadian border passport in hand and could easily have rerouted herself to abscond from this prosecution knowing the authorities were on her trail. She did not, she returned home. The same is true after the FBI interviewed her upon her arrival in Tampa and released her. She did not leave the jurisdiction even after she allegedly confessed to knowing her brother planted the IED when she left the United States with him.  Instead, she did her life and agents found her in an

---

[1] 18 U.S.C. §3 and 18 U.S.C. §1512 do not require the use, attempted use, or threatened use of physical force.

[2] Ms. Zheng was questioned by agents during what the government calls a voluntary statement.  She was released after questioning.

expected place in the immediate community.  These next steps after law enforcement contact and after the alleged crimes are irrefutable proof that she is not a flight risk.  She did not attempt to flee while fully outfitted with the means to do so but rather walked back into the jaws of prosecution.  A strong order of this Court can strip her of the means to leave using a combination of common conditions that regularly do so.  The drama affixed to this case should not control the clear application of the risk of flight analysis which by the straight-forward and agreed upon facts strongly favors Ms. Zheng's release.

### 2.  Weight of the Evidence Against Ms. Zheng

Defense counsel and Ms. Zheng have not received discovery.  During the initial detention hearing, the government stated that Ms. Zheng provided a statement to agents indicating that she knew of her brother's involvement in placing a device at MacDill and that she helped him evade capture.  However, the full scope of her statement is unknown to defense.  Further, the government stated that the vehicle used to transport the device was sold to CarMax and that prior to the sale someone attempted to vacuum the trunk that had some residue that may be similar to the device left at MacDill.  Inside the vehicle were receipts for bomb making material and a burner phone.  Ms. Zheng's knowledge of the receipts, her knowledge of the nature of the receipts, and her knowledge about a telephone in the vehicle are unknown.  It is also unknown who vacuumed the vehicle and

whether the material was chemically similar to the material on the device at MacDill.

Regardless, the weight of the evidence is the least important of the various 3142(g) factors. *See United States v. Cohen*, No. 8:20-cr-134-T-33-AEP, 2020 WL 1650606, at *2 (M.D. Fla. Apr. 3, 2020) (citing *United States v. Motamedi*, 767 F. 2d 1403, 1408 (9th Cir. 1985); *United States v. Friedman*, 837 F. 2d 48, 50 (2d Cir. 1988)). Moreover, even if the weight is strong, the very facts that the government relies upon show she is not a flight risk. She provided incriminating statements when she easily could have invoked her right of silence. She signed releases for the government to get into her phone revealing a bevy of evidence against her. These cooperative acts show compliance with government authority. It should be considered that her flight to China was not done in the face of announced government intent to prosecute him just the reasonable expectation that he could be held accountable if involved. Other than possibly achieving the safe harbor of her brother in China, the totality of the government's allegations against her show little if any regard for her own wellbeing.

### 3. History and Characteristics of Ms. Zheng

Ms. Zheng was born in Manhattan, New York and has lived in Pasco County, Florida most of her life. She graduated high school locally and went to

study or work in Ohio, Pennsylvania, England, and New York. She then returned to Pasco County, Florida.

If released, Ms. Zheng will return to the home owned by her parents in Pasco County on GPS giving Pretrial her every move. She will work as allowed. The alleged disparity in her work history is a timing misunderstanding. She did some part time work at her family restaurant while doing some stock market trading for income. After her parents' detention, the operation of the restaurant was placed in peril, so she shifted her focus to helping at the restaurant.

**Danger to Any Person or the Community**

There is no reason to conclude Ms. Zheng is a danger to any individual or the community at large. She has no criminal history and no failures to appear. She denies a history of controlled substance use and a history of mental illness. Yet she is more than willing to have conditions related to both of these items imposed. This arrest marks her first time being in custody. There is no evidence of aiding or abetting and no evidence of a conspiracy involving Ms. Zheng. Instead, she became aware of law enforcement's investigation when she was first questioned in Detroit. She did not flee from questions or agents. The Magistrate takes issue with the why of going to China with her brother offered in that interview. Yet, the release and detention statute does not require a truthful confession for conditions of release to be set. She answered questions and continued her journey back to

Florida.  Back in Florida, she continued with her routine.  The allegations involve the presentation of a once-in-a-lifetime circumstance. There is no risk of future criminal conduct because there are no further acts to aid and abet.  Certainly, the Court can order no contact with her brother as it often does with co-defendants.

### B. There is a statutory presumption of release and there are conditions of release that will ensure Ms. Zheng's future appearance and the safety of the community

Because of the non-violent nature of the charge in this case, the Bail Reform Act imposes a statutory presumption in favor of release.  Pretrial Services recommends several conditions of release, including reporting as directed, surrendering her passport to the Clerk of Court, a travel restriction, and seeking or maintaining employment.  Ms. Zheng proposes the additional conditions noted at the beginning of this motion to revoke including GPS tracking.  In the end, the Pinellas County Jail is not the place for Ms. Zheng to spend her pretrial because there is a combination of conditions that will ensure her presence and protect the community from any potential harm.  Release will assist counsel with her defense and is the presumptive status under the statute given our facts.

### IV.   Conclusion

The government cannot demonstrate that this case involves a serious risk that Ms. Zheng will flee or that she is a danger to the community.  Ms. Zheng's release on the conditions recommended by Ms. Zheng which are significantly

more than Pretrial Services requested. She therefore requests the Court revoke the

prior order and set conditions for her release from custody.

Respectfully Submitted,

*/Michael P. Maddux*
Michael P. Maddux, Esquire
Florida Bar No.: 0964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 33606
Phone: (813) 253-3363
Fax: (813) 253-2553
E-mail:
mmaddux@madduxattorneys.com
jszymczak@madduxattorneys.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th **day of April 2026**, I electronically filed

the foregoing with the Clerk of Court by using the CM/ECF system.

*/Michael P. Maddux*
Michael P. Maddux, Esquire